NOT DESIGNATED FOR PUBLICATION

No. 127,810

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ROBERT DALE KNIGHT SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed July 2, 2026. Affirmed in part and vacated in part.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL P.J., ARNOLD-BURGER, J., and ANDREA PURVIS, District Judge, assigned.

HILL, J.: Robert Knight appeals his convictions and sentences for two counts of aggravated indecent liberties with a child. He claims juror misconduct, improper admission of evidence of his prior criminal conviction, cumulative error requiring reversal, and an illegal sentence. We find no reversible error but agree there is a sentencing error that must be corrected.

1

*Two encounters between a man and a young relative lead to criminal charges.*

The State charged Knight with two counts of aggravated indecent liberties with a child for touching a four-year-old girl we will refer to as S.M.

The first encounter was on February 19, 2023. S.M. was at Knight's house. S.M.'s mother, H.M., was seven months pregnant and was lying down in a bedroom. When H.M. went back into the living room, S.M. told H.M. that she wanted to leave because Knight had touched her "no-no." H.M. "blew . . . off" the comment. Later, while showering, S.M. told her mother, H.M., not to wash her "'no-no'" because Knight had touched it. H.M. noted that S.M.'s vagina was "pretty red" and "rubbed raw." Yet, H.M. still did not believe S.M.

The second encounter was on March 3, 2023. Knight hosted a party at his house. During the party, Michael Knight (the defendant's adult son) saw S.M. in the living room sitting on Knight's lap. Knight appeared to be rubbing S.M.'s vagina. The room was full of people.

Michael then talked to his brother, Dakota, and they went to chat in a bedroom. Michael's wife, Courtney, joined them. Michael told them what he had seen. The three went back to the living room to watch Knight to see if he did it again. All three saw Knight place S.M. on his lap and then rub S.M.'s vagina while in a room full of people. After seeing that, Michael stepped over, grabbed S.M., and took her to her parents and told them it was time to leave. When she was later asked if someone at the party had touched her, S.M. said yes.

The next day, the family reported these events to the police. During a forensic interview, S.M. said that Knight touched her "no-no" under her pants in his living room. She explained that her "no-no" was the part of her body where she goes pee. When later

2

reinterviewed, she made similar statements and said that Knight touched her "no-no" while in his truck. Those interviews were recorded.

Before trial, the State moved to admit under K.S.A. 60-455 prior crime evidence. The court granted the motion. At trial, the State presented testimony that Knight had been convicted of indecent liberties with a child in 1996. Knight objected to the admission of this evidence at the beginning of the trial.

At trial, S.M. testified that Knight had touched her vagina "[a] lot" when she was at Knight's house. Michael, Dakota, and Courtney all testified that they had seen Knight rub S.M.'s vagina. Knight's wife, Jennifer, testified she did not see Knight touch S.M. inappropriately. Other people at the party testified they did not witness Knight touch S.M. inappropriately.

The jury found Knight guilty of both charges. The court asked the jurors as a group if it was their verdict. The jurors as a group responded, "yes." Neither party wished to poll the jury.

Knight moved for a new trial based on alleged juror misconduct. He offered an affidavit by a juror and told the court that the juror was present if the court wanted to hear from her. The court declined to hear from the juror. The court denied the motion because intrinsic evidence about jury deliberations is inadmissible and there were no dissents when he asked the jury if guilty was their verdict.

The district court sentenced Knight to two concurrent life sentences without the possibility of parole for 25 years. The district court ordered lifetime postrelease supervision and lifetime parole.

Knight raises four issues in this appeal:

1.  The district court abused its discretion by denying Knight's motion for a new trial without hearing testimony from a juror.
2.  The district court erred by admitting evidence of Knight's 1996 conviction for indecent liberties with a child.
3.  Cumulative error deprived Knight of a fair trial.
4.  The district court had no authority to order postrelease supervision for an off-grid indeterminate life sentence.

*We review Knight's motion for a new trial.*

Knight argues that the district court erred by refusing to recall an available juror to testify in support of his claim of jury misconduct. In response, the State argues that Knight's motion for a new trial and attached affidavit did not allege jury misconduct, but merely suggested evidence that was intrinsic to jury deliberations and thought processes—evidence that is prohibited by K.S.A. 60-441.

Knight, alleging juror misconduct, moved for a new trial. In support, he offered an affidavit from a juror and told the court that the juror was present and available to testify and that the court could hear from her directly.

The affidavit stated:

"1) I said 'not guilty' I do not feel there was enough evidence.

"2) Lady juror said, she heard something about a 'dump truck' in the 2nd video taken by forensics of [S.M.], and was not mentioned in the court room.

"3) Other jurors felt the defendant is not guilty due to 'not enough evidence.'

4

"4) Other jurors stated the statement from the witnesses did not match each other.

"5) The elected jury foreman said, 'he didn't feel comfortable signing and suggested I sign it.' I asked, 'should I sign it under duress?'

"6) A juror said, 'don't have her sign it, she will have to talk, and we don't want her to talk in open court.'

"7) Another juror said, 'I need to say guilty so I don't hold up the jury.' He stated we would have to stay locked in the room through the night until I said guilty.

"8) Another juror took me aside and told me he too felt the defendant is not guilty but after hearing what lady juror said about the work truck that he felt his opinion change. He felt I should just say guilty and mentioned a couple others that mind was changed when we heard what wasn't discussed in open court.

"9) After the court was dismissed the judge told the jury that he was surprised at the guilty verdict and that due to 'open records' he can tell us the defendant was found 'not guilty' of rape in a trial earlier.

"In closing I will add that upon that day and in the deliberations room, I felt animus from the other jury members. I felt that I was intimidated and humiliated and my voice was not heard."

The court declined to hear from the juror and denied the motion. The court held that intrinsic evidence about jury deliberations is legally inadmissible. Plus, the court observed that there were no dissents when the court asked the jury if guilty was their verdict.

*The law guides us to answer two questions.*

When reviewing claims of juror misconduct, a district court must make a two-step inquiry to determine whether a declaration of a mistrial or an order for a new trial is warranted. First, the court must determine whether juror misconduct, in fact, had occurred. If so, then secondly, it must determine whether the misconduct substantially prejudiced the accused's right to a fair trial. Said another way, the court must determine whether the State can show beyond a reasonable doubt that the misconduct did not affect the trial's outcome. *State v. Hirsh*, 310 Kan. 321, 343, 446 P.3d 472 (2019). This court reviews the district court's determination of these two issues under an abuse of discretion standard. *State v. Longoria*, 301 Kan. 489, 530, 343 P.3d 1128 (2015).

*The recall of jurors is limited under Kansas law.*

"A recall of the jury is not a routine matter. Jury service is a public duty of citizens and recall of jurors after their service has ended to testify as to events occurring in the jury room during deliberations is a serious step. That step is to be undertaken only for just cause." *State v. Ruebke*, 240 Kan. 493, 513, 731 P.2d 842 (1987).

Two statutes direct our inquiry. The first, K.S.A. 60-441, prohibits the receipt of evidence to show the effect of any statement, conduct, event, or condition upon the mind of a juror as influencing his or her verdict or concerning the mental processes by which his or her verdict was determined. The second, K.S.A. 60-444(a), allows a juror to testify about the conditions or occurrences within or outside the jury room having a material bearing on the validity of the verdict, except as limited by K.S.A. 60-441.

In other words, jurors may testify about occurrences of juror misconduct. But the cases make it clear that jurors cannot testify concerning their own thought processes or to what considerations influenced them in arriving at their verdict because there is no way to

test the truth of their answers. *State v. Franklin*, 264 Kan. 496, 500-04, 958 P.2d 611 (1998). By following these principles, we allow for confidentiality of jury deliberations, protection of jurors following their discharge, and finality of jury verdicts. See *Alenco, Inc. v. Warrington,* 65 Kan. App. 2d 79, 103-04, 560 P.3d 586 (2024), *rev. denied* 320 Kan. 861 (2025).

The law is not a strict ban on juror testimony. For example, a juror may testify if they believe the jury "'intentionally disregarded the [district] court's instructions.'" *Alenco*, 65 Kan. App. 2d at 104. But attempts by jurors to convince other jurors to change their vote are not misconduct; they are part of jury deliberations. "An attempt to persuade a person to vote differently than he or she feels may seem somewhat coercive, but an attempt to convince a minority member of the jury of the error of a position, while perhaps uncomfortable for the minority member, does not constitute juror misconduct." *State v. Jones*, 29 Kan. App. 2d 936, 940, 34 P.3d 82 (2001).

A fair reading of the juror affidavit here shows that its statements fall into two categories: discussions about the evidence and attempts to persuade a juror to change her vote. The ruling in *Jones* controls our view of the evidence in the affidavit: the affidavit does not prove juror misconduct.

Frankly, we see nothing improper about the jurors discussing the forensic interview of S.M. where she mentioned Knight inappropriately touching her in his truck. That was evidence admitted in open court for the jury to consider through the video and testimony by the forensic interviewer. There was nothing improper about the jurors discussing whether there was enough evidence to convict Knight or whether the witnesses testified consistently. That is not evidence of jury misconduct. Rather, it is evidence of jury deliberations. Any testimony from a juror regarding how those discussions influenced that juror to vote was prohibited under K.S.A. 60-441, which excludes the receipt of evidence to show the effect of any statement upon the mind of a

7

juror as influencing her verdict or concerning the mental processes by which her verdict was determined.

The remaining allegations in the affidavit—that the juror felt pressured to vote guilty—mirror the allegations in *State v. Kaiser*, 260 Kan. 235, 249, 918 P.2d 629 (1996), and *State v. Mitchell*, 234 Kan. 185, 190-91, 672 P.2d 1 (1983). As in those cases, the juror's allegations related to her mental processes and considerations that influenced her in arriving at a verdict. Such testimony is prohibited under K.S.A. 60-441. The district court was correct in holding that this is not evidence of jury misconduct.

In refusing to hear from the juror, the district court did not make an error of fact or law and its decision was reasonable. The testimony the juror would have given was prohibited under K.S.A. 60-441.

To answer our first question, we find no jury misconduct. Thus, we need not move on to answer the second question of whether the jury's conduct substantially prejudiced Knight's right to a fair trial.

We find no abuse of discretion here.

*The court did not abuse its discretion in admitting evidence of Knight's prior conviction.*

Knight argues that the court erred by allowing the State to admit evidence of a prior sex offense conviction. In response, the State contends the district court properly weighed the probative value of the admission of the evidence of Knight's prior conviction for indecent liberties with a child against its prejudicial effect. In the State's view, the district court did not abuse its discretion in ruling the evidence was admissible under K.S.A. 60-455(d), which allows for admission of such evidence to prove propensity.

8

The record reveals that Knight has a 1996 conviction for indecent liberties with a child. He had sexual intercourse with a 13-year-old child when he was 25 years old. In her statement, the victim said that she told Knight how old she was the first night they had sex. Knight said he believed she was 16. In Knight's view, these dissimilar facts make the admission of this record prejudicial and not probative.

Pretrial, the district court weighed the probative value versus the prejudicial effect of this evidence by using the factors set out by our Supreme Court in *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 (2019). In determining the evidence had probative value, the court found that: (1) The prior act was proven because Knight did not contest the charge; (2) though the facts were different, there was probative value because Knight had sex with an underage person; (3) the material fact was heavily disputed in this case because Knight denied the allegations; and (4) the State only sought to use the journal entry of conviction, which was less prejudicial than introducing testimony.

In determining the evidence would not cause undue prejudice, the district court found: (1) The evidence would not contribute to an improper jury verdict because the jury would not know what the prior sentence was; (2) the evidence would not distract the jury from the central trial issues because the State was not going to introduce live testimony; and (3) the evidence would not be time consuming because the State wanted only to offer the journal entry of conviction. The district court balanced the factors and concluded that the probative value substantially outweighed the risk of undue prejudice.

Then, at trial, a detective testified that Knight had a 1996 conviction for indecent liberties with a minor child. Rather than admitting the journal entry of conviction, the jury was instructed:

"The following facts have been agreed to by the parties and are to be considered by you as true:

9

"That on August 2, 1996, the Defendant entered a plea of no contest to a charge of indecent liberties with a minor, that occurred on September 1, 1995. At that time, the court accepted his plea and adjudged the defendant guilty."

The jury was instructed that they may consider the prior conviction as evidence of Knight's propensity to commit sexual misconduct. But they may not convict Knight of the charged crime simply because he committed another crime.

During jury deliberations, the jury asked, "What are the circumstances of the 1996 case against the defendant?" In response to that question, the court told the jury to only consider the evidence submitted to them.

*Several cases control this issue.*

This court reviews a district court's ruling on whether to admit evidence under K.S.A. 60-455(d) for an abuse of discretion. This court will reverse the district court only if no reasonable person would adopt the district court's view, or the decision was based on an error of law or fact. *State v. Satchell,* 311 Kan. 633, 640-41, 466 P.3d 459 (2020).

When considering the admission of this type of evidence, the nature of the charges pending against the defendant are important. When a defendant is accused of a sex offense, "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 60-455(d); *State v. White*, 316 Kan. 208, 215, 514 P.3d 368 (2022). When evidence of prior sexual misconduct is admitted for propensity, a limiting instruction is not required when the defendant is charged with a sex crime. *State v. Perez*, 306 Kan. 655, 673, 396 P.3d 78 (2017).

Before admitting such propensity evidence, however, a district court must consider whether the potential prejudice outweighs the probative value of the evidence. *White*, 316 Kan. at 215. This means that there are two considerations to weigh: the probative value of the evidence and the potential prejudicial effect of admitting that evidence.

In evaluating the probative value of evidence sought to be introduced under K.S.A. 60-455, district courts consider:

- how clearly the prior act was proven;
- how probative the evidence is of the material fact sought to be proven;
- how seriously disputed the material fact is; and
- whether the government can obtain any less prejudicial evidence. *Boysaw*, 309 Kan. at 541.

In evaluating the possible prejudicial effect of evidence sought to be introduced under K.S.A. 60-455, the district court should consider, among other factors:

- the likelihood that such evidence will contribute to an improper jury verdict;
- the extent to which such evidence may distract the jury from the central trial issues; and
- how time consuming it will be to prove the prior conduct. *Boysaw*, 309 Kan. at 541.

The prime case on this subject is *Boysaw*. In *Boysaw*, the Supreme Court held the district court did not abuse its discretion in admitting evidence of a 26-year-old prior conviction after weighing the probative value against the prejudicial effect. 309 Kan. at 542. Evidence of prior convictions for sex crimes involving 6-year-old victims were

11

admissible in a trial involving a 14-year-old victim. *State v. Razzaq*, 309 Kan. 544, 545, 548-49, 439 P.3d 903 (2019).

By applying those legal principles listed above to this case, we find no error.

In our view, the district court properly applied the law, using the factors approved by our Supreme Court to determine the prior conviction's probative value weighed against the potential for prejudice to the defendant from its admission. The district court found the probative-value factors favored the admission of the prior conviction. Its reasoning is supported by the facts and is reasonable.

In the 1996 prior conviction, while Knight did not contest that he had sex with the victim and pled to indecent liberties with a child, he now argues that conviction does not prove anything in this prosecution.

In this case, the material fact to be proved was whether Knight had engaged in lewd fondling or touching of a four-year-old child. He contends that the 1996 conviction is not probative of that material fact because it involved a 13-year-old victim, Knight had sexual intercourse with the victim, Knight believed the victim was above the age of consent, and the conviction occurred decades ago.

While there is a difference between a 4-year-old and a 13-year-old child, we note that both are young, underage girls. There was probative value despite the age difference. See *Razzaq*, 309 Kan. at 545, 548-49 (evidence of prior convictions for sex crimes involving 6-year-old victims were admissible in a trial involving a 14-year-old victim). Knight's propensity to have sex with an underage girl makes it more likely that he would have sexual contact with another underage girl. The evidence suggests that Knight did know that the 1996 victim was 13 years old. And a decades old conviction can still be probative. See *Boysaw*, 309 Kan. at 542.

Turning to the possible prejudicial effect of admitting this evidence, we see that there was no less prejudicial evidence available to the State here. The State merely told the jury that Knight had entered a plea of no contest to a charge of indecent liberties with a minor. The State did not tell the jury about Knight's sentence.

Knight contends to us that the prior crime evidence was prejudicial because the jury may have assumed the underlying facts were more prejudicial than they were. We are not convinced that is true. In our view, it is generally more prejudicial for the jury to hear testimony from the victim with details of the abuse or a video of the defendant's confession. See *White*, 316 Kan. at 215-16.

The district court also found the evidence would not cause undue prejudice. Again, its reasoning was both supported by the facts and reasonable. The district court correctly found that there was little likelihood that evidence of the prior conviction would contribute to an improper jury verdict because the jury was not told the sentence Knight received in that case. The jury would have no reason to believe that Knight should have received greater punishment in that case and thus a desire to punish him in this case to make up for it. See *Satchell*, 311 Kan. at 643-44.

The prior conviction evidence had little likelihood of distracting the jury from the central trial issues. There was only a mention of the prior conviction by a detective and a stipulation to the conviction in the jury instructions. It was not time consuming to prove the prior conduct as Knight pled to the conduct and it was introduced by stipulation. The district court then balanced the factors and determined that the probative value outweighed the risk of undue prejudice. We cannot find that no reasonable person would have come to the same conclusion.

There is no abuse of discretion here.

*Knight has failed to show cumulative error.*

For his third issue, Knight contends that cumulative errors deprived him of a fair trial, referring to the first two issues.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024). The cumulative error rule does not apply if there are no errors or only a single error. *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

As we have found no errors, we reject this argument.

*There is no dispute about a sentencing error.*

The parties agree that the district court erred by ordering lifetime postrelease supervision in addition to lifetime parole.

Knight's sentence was simple. For two counts of off-grid aggravated indecent liberties with a child, the court imposed concurrent sentences of life imprisonment without the possibility of parole for 25 years. The court also ordered lifetime postrelease supervision and lifetime parole.

Simply put, we hold that a sentencing court has no authority to order postrelease supervision in a case with an off-grid, indeterminate life sentence. *State v. Becker*, 311 Kan. 176, 191, 459 P.3d 173 (2020). Knight's eventual release is subject to parole under K.S.A. 22-3717(u), not postrelease supervision. The district court erred by imposing lifetime postrelease supervision.

14

The improper imposition of lifetime postrelease supervision can be vacated without the need for further proceedings. *Becker*, 311 Kan. at 191.

Therefore, we vacate the district court's imposition of lifetime postrelease supervision in this case. Knight's convictions and the remainder of his sentences are affirmed.

Affirmed in part and vacated in part.